AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) blue, damaged, Apple iPhone cellular telephone in a<br>blue colored case, contained in an evidence bag designated by<br>"PROP-14387" and "Item #2" | Case No. 24-3149 MB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before *April 9, 2024* *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for <u> 30 </u> days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  *March 26, 2024*
*@ 1050 AM*

_____
*M Morrissey*
HON. MICHAEL T. MORRISSEY
U.S. Magistrate Judge

City and state: <u>Phoenix, Arizona</u>

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:_____

_____
*Executing officer's signature*

_____
*Printed name and title*

# **ATTACHMENT A**

The property to be searched is:

One (1) blue, damaged, Apple iPhone cellular telephone in a blue colored case, contained in an evidence bag designated by "PROP-14387" and "Item #2", currently in the custody of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

## **ATTACHMENT B**

## **DESCRIPTION OF ITEMS TO BE SEARCHED FOR**

1.     Data and/or digital files stored on or accessed through the Target Smartphone (as described in Attachment A) relating to firearms trafficking including violations of 18 U.S.C. § 371, 18 U.S.C. § 922(a)(6) (Material False Statement During the Purchase of a Firearm), 18 U.S.C. § 924 (a)(1)(A) (False Statement on FFL Records), and 18 U.S.C. § 933 (Firearm Trafficking), wherever it may be stored or found, specifically including:

   a.     lists of customers and related identifying information;

   b.     types, amounts, and prices of firearms/ammunition or drugs trafficked, as well as dates, places, and amounts of specific transactions;

   c.     types, amounts of cash obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

   d.     any information related to sources of cash or narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

   e.     all bank records, checks, credit card bills, account information, and other financial records.

2.     Electronic correspondence stored on or accessed through the Target Smartphone relating to firearms trafficking, to include emails and attached files, text messages, and instant messaging logs.

3.     Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the Target Smartphones.

4.     Contact lists stored on or accessed through the Target Smartphones, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5.      Evidence of persons who used, owned, or controlled the Target Smartphones.

6.      Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the Target Smartphones.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) blue, damaged, Apple iPhone cellular<br>telephone in a blue colored case, contained in an<br>evidence bag designated by "PROP-14387" and "Item<br>#2" | Case No.  24-3149 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §  922(a)(6) | (Material False Statement During the Purchase of a Firearm) |
| 18 U.S.C. § 924 (a)(1)(A) | (False Statement during the Purchase of a Firearm) |
| 18 U.S.C. § 933 | (Trafficking of Firearms) |
| 18 U.S.C. § 371 | Conspiracy |

The application is based on these facts:

### See attached Affidavit of Special Agent Alexander Schilke

☒ Continued on the attached sheet.

☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Sheila Phillips

*Sheila Phillips*
Digitally signed by SHEILA
PHILLIPS
Date: 2024.03.26 08:15:31 -07'00'

Sworn to telephonically and signed electronically.

Date: _March 26, 2024_

City and state: Phoenix, Arizona

ALEXANDER SCHILKE  Digitally signed by ALEXANDER SCHILKE
Date: 2024.03.25 19:32:57 -07'00'

*Applicant's Signature*

Alexander Schilke, Special Agent, ATF
*Printed name and title*

*M Morrissey*

*Judge's signature*

HONORABLE MICHAEL T. MORRISSEY
*Printed name and title*

## **ATTACHMENT A**

The property to be searched is:

One (1) blue, damaged, Apple iPhone cellular telephone in a blue colored case, contained in an evidence bag designated by "PROP-14387" and "Item #2", currently in the custody of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEARCHED FOR

1.      Data and/or digital files stored on or accessed through the Target Smartphone (as described in Attachment A) relating to firearms trafficking including violations of 18 U.S.C.  § 371, 18 U.S.C. § 922(a)(6) (Material False Statement During the Purchase of a Firearm), 18 U.S.C. § 924 (a)(1)(A) (False Statement on FFL Records), and 18 U.S.C. § 933 (Firearm Trafficking), wherever it may be stored or found, specifically including:

a.      lists of customers and related identifying information;

b.      types, amounts, and prices of firearms/ammunition or drugs trafficked, as well as dates, places, and amounts of specific transactions;

c.      types, amounts of cash obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

d.      any information related to sources of cash or narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

e.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Electronic correspondence stored on or accessed through the Target Smartphone relating to firearms trafficking, to include emails and attached files, text messages, and instant messaging logs.

3.      Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the Target Smartphones.

4.      Contact lists stored on or accessed through the Target Smartphones, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5.      Evidence of persons who used, owned, or controlled the Target Smartphones.

6.      Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the Target Smartphones.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Alexander Schilke, being duly sworn, do depose and state as follows:

## INTRODUCTION & BACKGROUND INFORMATION

1. Your Affiant is a Special Agent with Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and has been since May 21, 2023. I am presently a member of the ATF Phoenix Field Division Group I. As a Special Agent of the ATF, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal and state laws. In this capacity, I am empowered to investigate violations of federal law in the areas of alcohol, tobacco, firearms, and explosives. I am a graduate of the Federal Law Enforcement Training Center where I completed over 600 hours of training which included constructive interviews, arrest techniques, federal law, firearms law, and report writing. I have participated in controlled buys of firearms and narcotics from targets of law enforcement investigations.

2. Prior to my employment as a Special Agent with the ATF, I worked as a Patrol Officer with the City of East Grand Forks, Minnesota Police Department for 12 years. During my employment with the City of East Grand Forks Police Department, I held positions as a Field Training Officer, Drug Recognition Expert, and Use of Force Trainer. While employed in this position I wrote, and participated in, numerous search warrants for the residences and electronic devices. I also participated in numerous felony level investigations, which included interviewing suspects and witnesses, processing evidence, and testifying in court. I attended the Alexandria Technical and Community College Law

Enforcement Skills Program and received training in firearms, tactics, arrest techniques, interviewing, and investigatory techniques. Based on training and experience, I am familiar with methods used for firearms trafficking and narcotics trafficking.

3.   Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that firearms traffickers commonly use cellular telephones to communicate with their associates and to facilitate the commission of their offenses.  These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the firearms trafficking associates and/or activity, all of which can be used to identify and locate associates, to identify methods of operation of the firearms traffickers and the responsible Transnational Criminal Organization (TCO), and to corroborate other evidence obtained during the course of the current investigation.

4.   The statements contained in this Affidavit are based on information obtained during a joint ATF and Homeland Security Investigations (HSI) investigation, and my experience and background with this case, and as a law enforcement officer in general. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of a firearms trafficking conspiracy in violation of  18 U.S.C.  § 371 (Conspiracy to Make

Material False Statements During the Purchase of a Firearm and Trafficking in Firearms), and violations of 18 USC 922(a)(6) (Material False Statement During the Purchase of a Firearm), 18 U.S.C. § 924 (a)(1)(A) (False Statement During the Purchase of a Firearm), and 18 U.S.C. § 933 (Trafficking in Firearms) is located within a cellular phone belonging to Angel Francisco Estrada Navarro (hereafter ESTRADA NAVARRO).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.  I make this affidavit in support of an application for a search warrant on one (1) cellular phone: A handheld device, seized from ESTRADA NAVARRO, further described as one (1) green, damaged, Apple iPhone cellular telephone in a green colored case, contained in an evidence bag designated by "PROP-14392" and "Item #5" (hereinafter, TARGET PHONE1), as described in Attachment A

6.  The device is sealed in an ATF evidence bag with a unique numbered United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Evidence Identification Label, based upon the seizure as evidence in connection with the arrest of ESTRADA NAVARRO on January 22, 2024. TARGET PHONE1 has been stored in a manner and state in substantially the same condition as when it first came into the possession of ATF.

7.  ESTRADA NAVARRO was arrested in the Southern District of California after crossing the border into the United States from Mexico on an arrest warrant resulting from an Indictment in CR-23-1717-PHX-DLR.  ESTRADA NAVARRO is detained pending

trial in that case on one Count of False Statement During the Purchase of a Firearm in violation of 18 U.S.C. §924(a)(1)(A). The investigation into his involvement with firearms trafficking is ongoing.

8.   The requested warrant would authorize a forensic examination of TARGET PHONE1 as described in Attachment A for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## BACKGROUND ON SMARTPHONES

9.   Based upon my knowledge, training, and experience, as well as information related to Your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, Your Affiant knows that certain types of cellular telephones referred to as "smartphones" (such as the TARGET PHONE1) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

10.   As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant,

but also for evidence that establishes what individual(s) used the Target Smartphones as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

11. As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored within the Target Smartphones. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

12. Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), an electronic communication device (such as the TARGET PHONE1) can contain other forms of electronic evidence that are not user-generated. In, electronic communication devices may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

        a.     Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

b.      Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

c.      Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

d.      Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e.      Computer file systems can record information about the dates that files were created and the sequence in which they were created.  This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

d.      When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

e.      The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an

electronic communication device user, and contextual evidence excluding an electronic communication device user.  All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

f.      The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.  Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used. Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

13.  Based upon my knowledge, experience, and training in firearms trafficking investigations, as well as the training and experience of other law enforcement officers with whom Your Affiant has had discussions, Your Affiant knows that there are certain characteristics common amongst individuals involved in firearms trafficking.  Individuals involved in such trafficking activity tend to:

a.      Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b.      Collect data pertaining to other co-conspirators involved in firearms trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

c.    Possess and maintain records reflecting bank transactions and/or cash transfers;

d.    Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Smartphone). These records are often maintained for several years and are kept close in close proximity to the drug-trafficker, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

e.    Correspond with and/or meet with other firearms trafficking associates to share firearms trafficking information and/or materials;

f.    Retain correspondence from other firearms trafficking co-conspirators relating to firearms trafficking activity including straw purchasers; and

g.    Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted firearms trafficking activity including straw purchasers.

14.   Individuals involved in firearms trafficking often communicate with persons making straw purchases for them regarding firearms to buy and where to purchase them. They often use applications such as WhatsApp that are accessed through smartphones such as TARGET PHONE1 to make it more difficult to track their firearms trafficking activities.

**PROBABLE CAUSE**

**INTERDICTION OF A M249S  SEMI-AUTOMATIC FIREARM**

15. On May 18, 2023, Special Agent (SA) Lowell Farley, with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Phoenix Field Division, Phoenix Field Office, Group I,  received information from Sportsman's Warehouse, a Federal Firearms Licensee (FFL) which is gun store, that ESTRADA NAVARRO, DOB: XX/XX/1994, Arizona Driver License: Q00627191, a Mexican national and Legal Permanent Resident (LPR) of the United States (Alien number: XXX-XX-3626), purchased an FNH USA, Model M249S, 5.56 x 45 mm caliber rifle.

16.  ESTRADA NAVARRO paid $11,000.00 on his debit card and the remaining $300.00 of the purchase price in United States (US) currency.

17.  SA Farley obtained the Arizona Department of Economic Security (DES) wage history for ESTRADA NAVARRO.  DES records revealed ESTRADA NAVARRO's name and social security number corresponded to wages recorded in the fourth quarter of 2022 as $ 611.20, and the first quarter of 2023 as $14,395.50.  Based on his wages, Your Affiant believes ESTRADA NAVARRO could not afford to purchase an $11,300 firearm.

18.  While at Sportsman's Warehouse, ESTRADA NAVARRO asked the store employees if the M249S he was purchasing was legal to own in Phoenix, Arizona (AZ). The store employees advised ESTRADA NAVARRO he could take the firearm to Phoenix,

but he should not take it to California (CA). ESTRADA NAVARRO was accompanied by a Hispanic female, and they were observed leaving the premises in a Chevrolet Camaro that appeared to have a non-Arizona license plate.

19. The M249S is the semi-automatic, civilian version of the M249 SAW (Squad Automatic Weapon) which a light machinegun used by the United States and allied militaries. Both are belt-fed weapons that fire the 5.56 x 45 mm round and can be used by one person or mounted on a vehicle or other stable shooting platform. The M249S firearm is highly sought after by members of Mexican drug cartels. In Your Affiant's experience, only collectors, the military or drug traffickers purchase this type of firearm. As such, Your Affiant believes ESTRADA NAVARRO knew or had reasonable cause to believe the M249S would be used in the commission of a felony.

20. On the date of the purchase, SA Farley reviewed the completed ATF Form 4473 - Firearms Transaction Record, a copy of ESTRADA NAVARRO's sales receipt, and a photograph of him. On the ATF FORM 4473, ESTRADA NAVARRO listed his current home address as XXXX W. McDowell Road Apt. XXXX, Phoenix, Arizona 85035. Agents recognized this address is in the same apartment complex as another defendant in a similar yet unrelated ATF/HSI firearms and narcotics trafficking investigation in which the defendant had ties to the Yuma/San Luis areas of Arizona.

21. Special agents also confirmed that ESTRADA NAVARRO had entered the United States earlier that morning and was driving a Camaro bearing Mexico license plate# B23-

NXS-5 through the Calexico, CA POE, which was in Imperial County in the Southern District of California.

22.   Investigative efforts led agents to interview the current occupant of  XXXX W. McDowell Road Apt. XXXX, Phoenix, AZ, the address ESTRADA NAVARRO listed on the ATF FORM 4473. The interviewee disclosed ESTRADA NAVARRO was an old acquaintance and she had given permission to utilize her address to receive mail, but he was never physically present at the address.

23.   HSI in Yuma, AZ, and members of the Yuma Police Department (YPD) coordinated an interdiction of the firearm based on probable cause that the purchase of the M249S violated federal law.  YPD conducted a traffic stop on the Camaro based on a traffic violation, and during the traffic stop ESTRADA NAVARRO gave consent to search his vehicle. The M249S was discovered in the trunk.

24.   YPD observed that ESTRADA NAVARRO appeared afraid once law enforcement seizes the weapon.  However, SA Armando Lopez, HSI Yuma, did not have sufficient resources to execute a probable cause arrest and subsequently released ESTRADA NAVARRO after seizing the firearm.

25.   Based on the above information, as well as additional information below, Your Affiant has probable cause to believe that ESTRADA NAVARRO planned to smuggle the firearm into Mexico himself or to deliver it to someone else to smuggle into Mexico.

## ESTRADA NAVARRO'S TIES TO MEXICO

26.   On August 11, 2023, ATF headquarters notified SA Farley that ESTRADA NAVARRO had filed a petition to claim the seized M249S.  The petition he filed with advised him that he was swearing the information on the claim was true under penalty of 18 USC 1001 (False Statement Material to an Investigation),   He stated on the form that his current residence was XXXX East C Street, Unit EXXX, Brawley, CA 92227.  At the time of the firearm seizure, however, ESTRADA NAVARRO provided another address to the YPD.   That address was on Avenue XX XXXX, Colonia Hidalgo, 21389, Mexicali, Baja California.

27.   Agents spoke with the occupant of the Brawley address and learned the ESTRADA NAVARRO had requested to have mail sent to this address; however, he had never resided or even stayed overnight there.

28.   Agents also learned that ESTRADA NAVARRO had/has a California Driver's License with an address of XXXX E. Borel Street, Delano, California 93215.  An ATF agent spoke with the occupants of this address and learned that ESTRADA NAVARRO resided  there for a few months over three years ago but has not been back to the address since.

29.   An analysis of ESTRADA NAVARRO's lengthy border crossing history showed a pattern indicative of someone living in Mexico who had quick, legal  access to the US and not someone living full-time in California.   Therefore, agents believe that ESTRADA

NAVARRO's primary residence is in Mexico.   However, even if he maintained an actual residence in California and had indicated it on the ATF 4473, the FFL would not have sold him the M249S, which is illegal to possess in both California and Mexico.

30.  The Camaro ESTRADA NAVARRO drove from Mexico into the United States to purchase the M249S was also registered and licensed to him in Mexico.

31.  On January 22, 2024, when ESTRADA NAVARRO was taken into custody on the federal warrant, he was attempting to enter the US from Mexicali, Baja California, Mexico, in further evidence that his primary residence was in Mexico.

32.  Based on information Your Affiant received from more experienced agents, persons who traffic firearms from the United States to Mexico,  often use false addresses and/or recruit persons who have unlimited, legal access to the United States— like ESTRADA NAVARRO.

## PRIOR EVIDENCE OF FIREARM TRAFFICKING

33.  Before his purchase of the M249S, ESTRADA NAVARRO was  a person of interest based on a similar yet unrelated ATF investigation.  In that case,  a defendant admitted to purchasing at least ten firearms for ESTRADA NAVARRO in furtherance to a scheme to smuggle firearms to Mexico. The defendant was sentenced to 3 years of federal probation for his role as a straw purchaser in the firearms trafficking conspiracy.

34.  The defendant in that case also revealed ESTRADA NAVARRO was involved in drug trafficking and that he deals in large quantities of marijuana.

## ESTRADA NAVARRO'S FALSE STATEMENTS

35.  FFLs are required by law to keep a copy of  the ATF FORM 4473 each time someone purchases a firearm.   Lying on the ATF FORM 4473 is a federal crime under  18 USC 922(a)(6) (Material False Statement During the Purchase of a Firearm) and 18 U.S.C. § 924 (a)(1)(A) (False Statement During the Purchase of a Firearm).

36.  Lying about being the "actual" buyer of a firearm is material to its sale because a person cannot buy a firearm on behalf of someone else and an FFL cannot sell a firearm to someone other than the "actual" buyer.

37.  Based on the information above, Your Affiant believes probable cause exists that ESTRADA NAVARRO purchased the M249S—the belt-fed firearm commonly used by drug traffickers – for someone else based on its nature and price.

38.  ESTRADA NAVARRO is indicted for lying on the ATF FORM 4473 about his address in violation of 18 U.S.C. § 924 (a)(1)(A) so that he could purchase the firearm after establishing false residency using the Arizona address.  In Your Affiant's experience this further indicates that he likely lied about being the actual purchaser, but instead bought it on behalf of someone else knowing that it was illegally destined for Mexico.

## TECHNICAL TERMS

39.  Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory

cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals

are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

40.   Based on my training, experience, and research, I know that TARGET PHONE1 and TARGET PHONE2 possess capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my

training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

41. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

42. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43. Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

44.   Manner of execution.   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of criminal offenses, in violation of 18 U.S.C. § 371,   18 USC 922(a)(6), 18 U.S.C. § 924 (a)(1)(A), and 18 U.S.C. § 933,   may be located on TARGET PHONE1, more fully described in Attachment A, and respectfully request that a warrant be issued for the search and seizure of those items described in Attachment B.

Respectfully submitted,

ALEXANDER SCHILKE   Digitally signed by ALEXANDER SCHILKE
Date: 2024.03.25 19:35:05 -07'00'

Alexander Schilke
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn and subscribed telephonically
this _26_ day of March 2024.

M Morrissey
HON. MICHAEL T. MORRISSEY
U.S. Magistrate Judge